**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**NORTHSIDE REALTY ASSOCIATES, INC., et al., Defendants-Appellants.**

**No. 74-1414.**

United States Court of Appeals, Fifth Circuit.

Sept. 4, 1975.

Harold L. Russell, Atlanta, Ga., for defendants-appellants.

William B. Saxbe, Atty. Gen., Dept. of Justice, Jerris Leonard, Asst. Atty. Gen., Frank E. Schwelb, Chief, Housing Section, Civ. Rights Div., David T. Kelley, Harold H. Moore, Atty., J. Stanley Pottinger, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Thomas N. Keeling, Housing Section, Washington, D. C., for plaintiff-appellee.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

(Opinion September 23, 1974, 5 Cir., 1974, 501 F.2d 181).

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In a spirited Petition for Rehearing and Rehearing En Banc, the Appellant principally argues that *United States v. Northside Realty Associates, Inc.,* 5 Cir., 1974, 501 F.2d 181 (*Northside II*) and *United States v. Northside Realty Associates, Inc.,* 5 Cir., 1973, 474 F.2d 1164 (*Northside I*) conflict with the intervening decision of this Court in *United States v. Pelzer Realty Co.,* 5 Cir., 1973,

1. The Government's complaint alleged that

    6. The acts and practices described in the preceding paragraphs constitute:

    (a) a pattern or practice by the defendants of resistance to the full enjoyment of rights secured by Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, et seq.; and

    (b) a denial to groups of persons of the rights granted by Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, et seq., which denial raises an issue of general public importance.

    \* \* \* \* \* \*

484 F.2d 438. But in no sense does the Petition for Rehearing—and more important the supporting brief—stop there.

While we understand Appellant's concern regarding the disposition of this case, we are struck by counsel's excessive language in Appellant's brief on petition for rehearing, riddled as it is with inaccuracies.

First, Appellant asks that

*somebody* examine the facts of this case and make a considered judgment on the question whether there has been a denial of rights raising an issue of general public importance.[1] The

[1] No claim is made that there was a "pattern or practice of resistance" (42 U.S.C. § 3613) which could justify issuance of an injunction against the defendants.

district court did not do it; this Court did not do it; and no Attorney General has done it.

(Petition for Rehearing Brief for Appellant at 2, *Northside II*).

Contrary to Appellant's statement above, the Government did in fact claim a "pattern and practice of resistance" and therefore asks for an injunction.[1] Further, the District Court's Order of December 30, 1971 specifically held that a group of people had been denied the protection of the Fair Housing Act as claimed by the Government and an injunction was appropriate.[2]

This Court also recognized that the Government sought injunctive relief and claimed a pattern and practice of resist-

WHEREFORE, the plaintiff prays that the Court enter an Order

1. Enjoining the defendants, their employees, agents and successors, and all those acting in concert or participation with any of them, from engaging in any racially discriminatory housing practice, and

*Northside I,* 474 F.2d 1164.

2. The District Court concluded that black people as a group have thereby been denied the protection guaranteed by the Act. This denial of protection is of sufficient importance to authorize the relief herein.

*Northside I.*

ance to the Fair Housing Act, thus raising an issue of general public importance. *Northside I,* 474 F.2d at 1165. And, except for the infection of the unconstitutional "penalty" on the realtor for obdurate opposition to the Act, we stated that the finding was amply supported, and we remanded for a further explanation of the reasons for a finding of discrimination and whether they were tainted by this impermissible burden.[3]

On remand the District Court clarified its original opinion to specifically hold that Northside's Vice-President Isakson's challenge to the constitutionality of the Fair Housing Act was not a consideration in its finding of a violation of the Act, and that its decision stood on more than the single incident with Bowers—that the Bowers pre-Act incident was used to highlight the similarity to other discriminatory incidents that followed. Supplemental Appendix at 14, *Northside II.*

When appealed to this Court for the second time, we reviewed the District Court's new order and determined that the District Court had complied with the guidelines in our earlier opinion, see note 3, *supra,* and therefore affirmed the decision. *Northside II, supra,* 501 F.2d at 182.

In language reflecting an unfortunate absence of professionalism, counsel for appellant next inveighs against our failing to mention and follow a Fourth Circuit opinion holding that the Government must prove discrimination of general public importance before granting injunctive relief.[4] Perhaps counsel is not aware that this Court is bound only by decisions of this Circuit and the Supreme Court of the United States. However, in this instance, counsel has been doubly wrong since we have in fact even complied with the standards of the Fourth Circuit for the District Court recognized that the Government had the burden of proof in showing a violation of the Fair Housing Act.[5] Moreover, *Hunter* is of little help to appellant's argument. In that case, the Fourth Circuit held two isolated, allegedly discriminatory acts insufficient to establish a pattern or practice of resistance. 459 F.2d at 217. Nonetheless, the *Hunter* Court held that, under the same facts, the Government "clearly" had established its right to bring the case as raising an issue of general public importance. 459 F.2d at 217–218. *Hunter* thus is of little solace to a party arguing that even though a violation of the Fair Housing Act has been established, the issue is still not one the Attorney General might deem to be of public impor-

---

3. We held, with Judge Goldberg writing for the Court, that the record could support findings and conclusions of law that justify equitable relief, but we must be able to read such findings clearly and distinctly. The trial court's findings are only clearly erroneous if they were based (1) on a belief that Isakson's claimed intention to test the constitutionality of the Fair Housing Act showed an intent to violate the Act, or (2) on the finding that the Bowers incident standing alone evidenced a pre-Act pattern or practice. We must be absolutely certain that the trial court's findings were not tainted by a belief that Isakson's challenge to the constitutionality of the Act was probative of an intent to violate the Act.

   *Northside I, supra,* 474 F.2d at 1171.

4. Petition for Rehearing Brief at 3, *Northside II:*

In *United States v. Hunter,* 459 F.2d 205 (4th Cir. 1972), the court held that the Government must *prove* a denial raising an issue of general public importance as a *predicate* for the grant of injunctive relief (459 F.2d at 217). * * * We have, at every opportunity, brought *Hunter* to the Court's attention. It is not important that counsel, in our frustration, are edged near the belief that one could practice in this Circuit without a library; it is important, however, that the defendants are unlawfully put upon by the failure to examine the facts in the light of the law and, for that reason, rehearing should be granted.

5. The District Court stated that the "question before this Court is whether the plaintiff has met the burden required." Supplemental Appendix at 13, *Northside II.*

tance. After an examination of the facts, the District Court then determined that the burden had been met and held that this "denial is of sufficient public importance to authorize the relief herein granted." Supplemental Appendix at 17, *Northside II.* And one relief specifically listed for violations of the Fair Housing· Act is an injunction.[6]

■ Appellant next asserts that inconsistencies exist in our final opinion in *Northside II,* asserting that in one breath we state that what is an issue of public importance is within the discretion of the Attorney General, and in the other that it did not matter that the Attorney General had failed to make such a determination here.[7] The only inconsistency, however, seems to be in counsel's misreading of what is actually there.

We stated in both *Northside I & II* that the determination of what is·an issue of public importance in order to bring an action under the Fair Housing Act is within the Attorney General's discretion. *Northside, supra,* 501 F.2d at 182, 474 F.2d at 1168. Appellant urges that whenever a new Attorney General is appointed, that person must re-examine every case for a fresh determination of public importance. As the District Court so ably reasoned,[8] such a position is without merit. Once a determination of public importance has been made by *an* Attorney General, the *Government* is the party and the case proceeds.

Here, a determination of public importance was made, a new Attorney General was appointed and the District Court found a violation of the Act. To ask for a fresh determination of probable cause

**6.** 42 U.S.C.A. § 3613 provides:

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court by filing with it a complaint setting forth the facts and requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice or denial of rights, as he deems necessary to insure the full enjoyment of the rights granted by this subchapter.

Pub.L. 90–284, Title VIII, § 813, Apr. 11, 1968, 82 Stat. 88.

**7.** Petition for Rehearing Brief at 3–4, *Northside II:*

In connection with this point, it should also be noted that the per curiam decision, despite its brevity, is nonetheless inconsistent within itself. The order first says that "the question of what constitutes an issue of general public importance is . . . a question most appropriately answered by the executive branch." But when defendants pointed out that no attorney general

had ever determined the facts found by the district court reflected an issue of general public importance, the court said there was "no merit in defendants' final contention" that the Attorney General should make the finding. We are reminded of Justice Stewart's remark in *United States v. Von's Grocery Company,* 384 U.S. 270 [86 S.Ct. 1478, 16 L.Ed.2d 555] (1966), "The sole consistency that I can find is that in litigation under Section 7, the government always wins."

**8.** Supplemental Appendix at 5, *Northside II, supra,* 501 F.2d 181:

The basis for the request of the defendants is due to the appointment of a new Attorney General. At the time the case was filed, the Attorney General of the United States was John Mitchell, whereas, at this time, the Attorney General of the United States is Elliot Richardson. As will be noted, the Attorney General himself is not a party to this litigation. The plaintiff is the United States of America, represented by the Attorney General. The action is filed only pursuant to a determination of reasonable cause made by the Attorney General. 42 U.S.C.A. § 3613. The Attorney General who made that determination was the one then in office. That determination having been made, there is no further necessity for re-referral to the Attorney General for a new determination of reasonable cause, nor is there a necessity for a substitution of parties.

by a new Attorney General after the District Court has already found a violation of the Act would be entirely superfluous. Accordingly, we said in our former opinion that in "view of our holding that the district court found facts sufficient to support a violation of the Act, we find no merit in defendants' final contention." *Northside II, supra,* 501 F.2d at 182.

Finally, counsel, obviously piqued, begs *somebody* to look at the facts of the case and discover that the wholly innocent employees at Northside have been unjustly marred by having an injunction placed on them against violating the Fair Housing Act. Such an unfounded holding, Appellant goes on, supports a "belief" that the Court is so overburdened and overworked that it cannot properly dispense justice.[9] This is akin to another litigant's contention, labelled by us as "intemperate," that his case had not received careful consideration and scrutiny by the Judges of the Court. See *George W. Bennett Bryson & Co., Ltd. v. Norton Lilly & Co., Inc.,* 5 Cir., 1974, 502 F.2d 1045, 1047.

But contrary to these charges this Court, while undoubtedly one of the Nation's busiest Courts, gives earnest consideration to every case, and certainly, as its history reflects, in the field of civil rights and race discrimination. Of course, in this travail we rely heavily on the quality of the briefs and arguments submitted by the attorneys.

We have twice looked at the evidence but to assure that no slight has been done either to the realtor or the law, we now review it a third time.

■ Northside has sold more than 3,000 homes since the effective date of the Fair Housing Act—none to a black person. And before this action was filed, no single family dwellings were sold to black persons. As we once said:

" . . . figures of this kind, while not necessarily satisfying the whole case, have critical, if not decisive, significance—"

*Rowe v. General Motors Corporation,* 5 Cir., 1972, 457 P.2d 348, 358. But the zero does not stand alone in the evidence box.

Prior to the effective date of the Fair Housing Act, a Mr. Bowers—a black person—was turned away from Northside Realty by Vice-President Isakson with the statement that Mr. Bowers could not afford a house in a certain price range. Without showing housing in a price range he could afford, Mr. Isakson referred Mr. Bowers to a Negro-owned real estate firm in Atlanta.

---

**9.** Petition for Rehearing Brief at 5, *Northside II*:

Defendants' second plea is that *somebody,* preferably this Court, but if not, the district court on remand, look at the facts as found by the district court and determine whether the two ancient incidents of alleged violation of the Fair Housing Act found by that court actually justify the issuance of any injunction, and particularly an injunction running against "officers, employees, brokers, agents" of Northside, several hundreds in number, who have spotless records of compliance with the law. Ordinarily, courts make findings as to the reasons why an injunction should issue. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Here no such findings have been made by anyone.

This Court apparently does not appreciate the consequences of the injunction's effect on wholly innocent people. For example, if the injunction stands, how does a Northside Realty salesperson answer questions about this litigation when applying for a new job, or for credit, or for insurance? How does she explain that she is subject to a court order restraining her from violation of the Fair Housing Act? Who would believe that such orders are issued against innocent people? Who would believe her when she said the order ran against all associated salespersons even though not a single one of them had ever violated the law? This Court was created to correct errors adversely affecting innocent persons. Its inaction here reinforces the belief of many that the Court is so overworked and overburdened that it cannot effectively dispense justice and that the Circuit should be split into two circuits.

■ Post-Fair Housing Act, Mr. Isakson indicated to a black college professor that he could not help him in finding a house and referred him to another agency. Further, Mr. Isakson's statements to black realtor Harold Dawson indicated Mr. Isakson's unwillingness to cooperate or deal with black realtors and their clients. The record contains further evidence—detailed by the District Court—that Northside and its employees and agents have created an image and unwillingness to help black clients. The District Court had ample basis for concluding that Northside Realty, far from having "spotless records of compliance with the law," has violated the Fair Housing Act so as to require enjoining Northside from further violations of the Act. Moreover, the District Court could reasonably have determined that only by ordering compliance with the Act at all levels of Northside's operations could the Act's goals (and the injunction's aim) be effectuated.

The District Court's detailed order of January 19, 1972, this Court's detailed opinion of March 4, 1973 (*Northside I*), the District Court's meticulous findings and order of September 27, 1973, and finally this Court's opinion of September 23, 1974 (*Northside II*), demonstrate that not only has *somebody* examined the facts of this case, but that two panels of this Court as well as a District Judge have carefully examined the record and all appellant's contentions. We repeat what Judge Ainsworth stated for us in outlining the review procedure of this Court, "Full and meticulous consideration is given to all cases, whether summarily decided or orally argued." *George W. Bennett Bryson & Co., Ltd. v. Norton Lilly & Co.,* 5 Cir., 1974, 502 F.2d 1045, 1051.

With the facts thus so thoroughly considered, we turn to the question of whether *Northside I* and *II* conflict with *Pelzer.* In *Pelzer* the Court recognized that when there is a judicial testing of whether a pattern or practice actually exists and that before relief is actually granted, the Court must *of course* "exercise independent judgment" to determine whether the Government has proved its case. Based on these statements, Appellants argue that the Court's opinions are inconsistent—that in the *Northside* opinions the Attorney General is given the very broad and independent power to bring the suit, while in *Pelzer* the Court suggests that that authority is not so independent and thus subject to judicial review.

Appellants fail to appreciate the nature of the cause of action pursued in the different cases, however, and based on that distinction, their arguments are unfounded. *Pelzer* was decided as a "pattern or practice" case,[10] on the issue of the review of the Attorney General's determination. *Northside,* on the other hand, is primarily a "denial of rights raising an issue of general public importance" case. Whatever the validity in pattern or practice cases of the distinction between (1) review of the Attorney General's decision to sue and (2) review of the sufficiency of the evidence on the merits, it makes little sense in this context. First, the same evidence will likely be used to demonstrate the Attorney General's reasonable cause to believe that a denial has taken place and to establish the actual denial. But that is also true, of course, in the pattern or practice cases. More importantly, the existence of a pattern or practice of discrimination may be discoverable using traditional judicial standards, but what constitutes an issue of general public importance is hardly susceptible of "proof" in the normal legal sense at all. Hence, the latter decision seems classically suit-

---

10. It is true that the complaint filed by the Government specifically charges an unlawful pattern and practice and the District Court so found and which, apart from the infection of non-constitutional burdens on the objecting realtor, we found supported by the evidence. *Northside I, supra* at 1171 (see notes 2 and 3, *supra*).

**890**

ed to the discretion of prosecuting authorities in the Executive Branch.[11]

In any event, the dicta in *Pelzer* concerning our type of case suggests only that courts might review the Attorney General's determination of "whether there was reason to believe that a group of persons had been denied rights guaranteed by the Fair Housing Act." But it says nothing about reviewing his decision on the public importance of the alleged denial. Hence, our reaffirmation of *Northside I* creates no conflict with *Pelzer.*

■ We continue to hold that under 42 U.S.C. § 3613 what is an issue of general public importance is within the Attorney General's discretion. See note 6, *supra.* To the extent that the issue of pattern or practice is in the case, we continue to hold that our review of the matter shows that the District Court did not err in finding that the Attorney General could have reasonable cause to believe that a person or group of persons was engaged in a pattern or practice of violating the Fair Housing Act.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

**11.** *United States v. Bob Lawrence Realty Co.,* 5 Cir., 1973, 474 F.2d 115, 125 n. 14, *cert. den.,* 1974, 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (Fair Housing Act); *United States v. International Assn. of Iron Workers Local No. 1,* 7 Cir., 1971, 438 F.2d 679, 681–82, *cert. den.,* 1971, 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60 (reasonable cause to bring employment discrimination suit); *United States v. Gustin-Bacon Division, Certainteed Prods. Corp.,* 10 Cir., 1970, 426 F.2d 539, 543 (Civil Rights Act of 1964); *United States v. Greenwood Municipal Separate School Dist.,* 5 Cir., 1969, 406 F.2d 1086, 1090–91 (reasonable cause to bring school desegregation suit); *Smith v. United States,* 5 Cir., 1967, 375 F.2d 243, 247, *cert. den.,* 1967, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (criminal); *United States v. Cox,* 5 Cir., 1965, 342 F.2d 167, 171, *cert. den.,* 381

U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (criminal); *Kennedy v. Lynd,* 5 Cir., 1962, 306 F.2d 222, 226, *cert. den.,* 1962, 371 U.S. 952, 83 S.Ct. 507, 9 L.Ed.2d 500 (reasonable cause to inspect voting records); *Boyd v. United States,* E.D.N.Y., 1972, 345 F.Supp. 790, 794 (settlement of fair housing suit); *United States v. Gray, D.R.I.,* 1970, 315 F.Supp. 13, 22–24 (reasonable cause to bring public accommodations suit); *United States v. Mitchell,* N.D.Ga., 1970, 313 F.Supp. 299, 300 (Fair Housing Act); *United States v. Real Estate Development Corp.,* N.D.Miss., 1972, 347 F.Supp. 776, 784, n. 2 (Attorney General's determination of general public importance under 42 U.S.C. § 3613 not reviewable); *United States v. Reddoch* (No. 6541–71–P, S.D.Ala., Jan. 27, 1972), aff'd, 5 Cir., 467 F.2d 897 (same).