580 F.2d 789
 UNITED STATES of America, Plaintiff-Appellant-Cross Appellee,
v.
John T. MITCHELL, d/b/a John T. Mitchell Real Estate
Company, Alton Gotcher and Mattie Belle Gotcher,
Defendants-Appellees-Cross Appellants.
 No. 76-3880.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 21, 1978.
 
 Michael P. Carnes, U. S. Atty., Fort Worth, Tex., J. Stanley Pottinger, Asst. Atty. Gen., Mark L. Gross, Walter W. Barnett, Martin Barenblat, Frank E. Schwelb, Attys., Drew S. Days, III, Asst. Atty. Gen., Dept. of Justice, App. Section Civ. Rights Div., Washington, D. C., for plaintiff-appellant-cross appellee.
 John F. Boyle, Jr., Dallas, Tex., for defendants-appellees-cross appellants.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 In this case under the Fair Housing Act, 42 U.S.C. § 3601 Et seq., the Attorney General sued John T. Mitchell, his real estate company, and his agents, seeking damages and an injunction to end racially discriminatory housing practices. The district court granted the injunction after finding that the defendants had "steered" blacks into a separate section of a large apartment complex. The United States appeals the refusal of the district court to allow the government to recover damages for the benefit of the injured parties. The defendants crossappeal, challenging the court's finding that they had engaged in a pattern or practice of steering blacks to a special area of the complex. They also challenge the award of costs to the government. We affirm on the appeal and the cross-appeal.
 
 
 2
 I. Steering.
 
 
 3
 The district judge found significant evidence to show that the defendants had steered blacks to a particular section of the apartment complex.[1] The complex, located on eight acres, is comprised of 18 buildings with 12 apartments in each building. Between 1973 and 1975, ninety-five percent of all blacks renting in the complex were rented apartments in the same section comprised of four buildings at a remote end of the complex. Fifty-three percent of all black tenants were located in the same building within this section. Black tenants testified that they were shown apartments only in this section. Vacant apartments in the "white" section were not shown, offered, or made available to blacks. Blacks who requested apartments with different color carpeting or in a different location were told that no other vacancies existed when other apartments were in fact available. Blacks occasionally had to wait for an apartment in the section to be repaired or cleaned when other apartments in other sections were available for immediate occupancy. Blacks who desired to change apartments within the complex were told that no other apartments were available. In one instance a black tenant was forced to move when his apartment became unhabitable. Although there were vacant apartments in the "white" section, he was not offered one of them.
 
 
 4
 The district judge's finding that the government proved a pattern or practice of discrimination was not clearly erroneous. Under 42 U.S.C. § 3604(a) an agent or owner may not refuse to sell or rent after a bona fide offer, refuse to negotiate for the sale or rent of a dwelling, or "otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin." Steering blacks to a particular group of apartments in a complex effectively denies access to equal housing opportunities. See U. S. v. Henshaw Bros., 401 F.Supp. 399 (E.D.Va.1974.) The Fair Housing Act prohibits not only direct discrimination but practices with racially discouraging effects; steering evidences an intent to influence the choice of the renter on an impermissible racial basis. Zuch v. Hussey,394 F.Supp. 1028 (E.D.Mich., 1975), Aff'd 547 F.2d 1168 (CA6, 1977). The government need only establish that race was a consideration and played some role in the real estate transaction. Moore v. Townsend, 525 F.2d 482 (CA7, 1975).
 
 
 5
 The fact that a large majority of Mitchell's black tenants were clustered in a defined area is highly probative of a § 3604(a) violation. Statistics, although not dispositive, "have critical, if not decisive significance." U. S. v. Northside Realty Associates, Inc., 518 F.2d 884 (CA5, 1975), Cert. denied, 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747 (1976). Therefore, a significant discriminatory effect flowing from rental decisions is sufficient to demonstrate a violation of the Fair Housing Act. Metropolitan Housing Development Corp. v. Village of Arlington Heights, 558 F.2d 1283 (CA7, 1977). "Conduct that has the necessary and foreseeable consequence of perpetuating segregation can be as deleterious as purposefully discriminatory conduct in frustrating the national commitment (to fair housing)." Id. at 1289. The district court's decision, based on statistical evidence and evidence of actions that effectively confined blacks to a section of the complex, is therefore consistent with the requirements of § 3604(a).[2] See U. S. v. Pelzer Realty Co., 484 F.2d 438, 443 (CA5, 1973), Cert. denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974), After remand, 537 F.2d 841 (CA5, 1976) (Pelzer II ) (Fair Housing Act prohibits acts with discriminatory impact regardless of intent).
 
 
 6
 II. Damages.
 
 
 7
 Although the district court granted the government an injunction and other affirmative relief,[3] the court held that the Attorney General was not entitled to procure damages on behalf of the tenants injured by the defendants' conduct. The United States contends that § 3613 permits the Attorney General to recover damages for private parties and that such damages are a necessary concomitant of full relief. We do not interpret § 3613 so broadly.
 
 
 8
 Section 3613 authorizes the Attorney General to seek
 
 
 9
 such preventive relief, including an application for a permanent or temporary injunction, restraining order or other order . . . as he deems necessary to insure the full enjoyment of the rights granted by this subchapter.
 
 
 10
 Whether the Attorney General can seek damages has not been decided in this circuit. The panel in Pelzer Realty II explicitly pretermitted the issue for later consideration. See 537 F.2d at 844 & n. 10. The government notes that we interpreted similar language in § 707(a) of Title VII to permit the government to seek back pay in pattern or practice employment discrimination suits. U. S. v. Georgia Power Co., 474 F.2d 906 (CA5, 1973).[4] The government also cites cases recognizing broad equitable powers to make whole plaintiffs entitled to an injunction[5] and two lower court cases permitting the United States to recover damages under § 3613.[6]
 
 
 11
 The type of relief the Attorney General seeks to recover under § 3613 differs from back pay relief under Title VII and from equitable monetary relief concomitant to an injunction. In Georgia Power we held the Title VII back pay remedy to be an equitable restitutionary measure committed to the discretion of the court. See 474 F.2d at 921. Requiring the employer who violates Title VII to disgorge wrongfully withheld back pay is consistent with traditional equitable principles that permit monetary relief in the form of restitution. See generally Warner Holding Co., supra, 328 U.S. at 398-400, 66 S.Ct. at 1089-1090, 90 L.Ed. at 1336-38. Indeed, a restitutionary purpose is the common thread that binds together all the cases cited by the government.
 
 
 12
 By contrast the damages sought by the Attorney General are legal damages and have no restitutionary function. In Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Supreme Court considered whether a private party's suit under 42 U.S.C. § 3612 for compensatory and punitive damages carried a constitutional right to jury trial. The court concluded that jury trial was mandated because
 
 
 13
 (a) damages action under the statute sounds basically in tort the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law. More important, the relief sought here actual and punitive damages is the traditional form of relief offered in the courts of law.
 
 
 14
 415 U.S. at 195, 94 S.Ct. at 1009, 39 L.Ed.2d at 267 (footnotes omitted). The court refused to analogize the Fair Housing Act remedy to Title VII's restitutionary back pay remedy, holding explicitly that the § 3612 remedy had a compensatory rather than restitutionary purpose.
 
 
 15
 Nor is there any sense in which the award here can be viewed as requiring the defendant to disgorge funds wrongfully withheld from the plaintiff. Whatever may be the merit of the "equitable" characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief.
 
 
 16
 415 U.S. at 197, 94 S.Ct. at 1010, 39 L.Ed.2d at 268.
 
 
 17
 An action by the Attorney General for compensatory and punitive damages would also be characterized as legal rather than restitution in equity. As we read § 3613 the Attorney General is empowered to seek only equitable remedies. To broaden this limited grant of authority to include the power to seek legal damages would be a substantial departure from principles of equity and statutory interpretation. Like the Fourth Circuit in U. S. v. Long, 537 F.2d 1151 (CA4, 1975), Cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976), we find no support in the language or legislative history[7] of § 3613 for extending the powers of the Attorney General by implication.
 
 
 18
 III. Costs.
 
 
 19
 Mitchell complains on appeal that court costs were wrongfully assessed and were excessive. The United States may, absent a statute, recover costs to the same extent as a private party. Pine River Logging & Improvement Co. v. U. S., 186 U.S. 279, 22 S.Ct. 920, 46 L.Ed. 1164 (1902); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2667, p. 138. Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." We review an award of costs only to correct an abuse of the district court's discretion. Kinnear-Weed Corp. v. Humble Oil & Ref. Co., 441 F.2d 631 (CA5), Cert. denied, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).
 
 
 20
 The district court did not abuse its discretion in awarding costs. Mitchell urges that the government prevailed only on the steering issue, losing both the refusal to let allegation and the plea for damages, and thus cannot be characterized as the "prevailing party" under Rule 54(d). A party need not prevail on all issues to justify a full award of costs, however.
 
 
 21
 Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d). . . . A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims. . . .
 
 
 22
 10 Wright & Miller, Supra, § 2667, p. 129-130. Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced. See, e. g., Adams v. Reed, 567 F.2d 1283 (CA5, 1978); K-2 Ski Co. v. Head Ski Co., 506 F.2d 471 (CA9, 1974). We decline to disturb the district judge's exercise of discretion in awarding costs to the government after it prevailed on a significant issue and procured broad affirmative equitable relief.
 
 
 23
 Mitchell complains that the costs were excessive because United States marshalls made two trips to subpoena witnesses when, because of proximity, both witnesses could have been served at once. We decline, as we always have, to review the amount of costs when the court clearly acted within its power to award such costs.[8] McWilliams Dredging Co. v. Dept. of Highways, 187 F.2d 61 (CA5, 1951).
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The government originally charged that Mitchell had refused to let to blacks. The court found insufficient evidence to support the allegation. This finding is not challenged on appeal
 
 
 [2]
 The Attorney General is empowered to bring suit under 42 U.S.C. § 3613 if he finds either that the defendant has engaged in a pattern or practice of discrimination or that the defendant has denied rights to a group of persons and the case raises an issue of general public importance. See U. S. v. Northside Realty Associates, supra. The district judge found that the Attorney General's action was valid on either of the permissible bases for suit under § 3613. We affirm this holding. The defendants' conduct establishes a pattern or practice of dealing with blacks; systematically steering black tenants to a distinct section of the complex was not an "isolated, accidental or peculiar event." U. S. v. West Peachtree Tenth Corp., 437 F.2d 221, 227 (CA5, 1971). The steered tenants also constitute a group of persons denied their rights to fair housing. See U. S. v. Hunter, 459 F.2d 205 (CA4), Cert. denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972)
 
 
 [3]
 The court ordered the defendant to (1) display fair housing posters; (2) include an equal housing opportunity statement in all advertising; and (3) maintain and post a schematic drawing of the complex showing all vacancies. We have consistently approved such affirmative relief accompanying prohibitory injunctions. See U. S. v. West Peachtree Tenth Corp., supra
 
 
 [4]
 The language in § 707(a) of Title VII, 42 U.S.C. § 2000e-6(a), permits the Attorney General to seek
 "such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."
 
 
 [5]
 See Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); Mitchell v. De Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192 (1935); Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)
 
 
 [6]
 U. S. v. West Suburban Bd. of Realtors, P.H.E.O.H. Rptr. P 13,641 (N.D.Ill.1974); U. S. v. Hilton-Sykes Rental Agency, P.H.E.O.H. Rptr. P 13,727 (M.D.Fla.,1975)
 
 
 [7]
 The legislative history is silent on the Attorney General's power to seek damages
 
 
 [8]
 Marshall's fees are taxed as costs under the explicit permission of 28 U.S.C. § 1920