UNITED STATES of America, Appellee,

v.

**J. C. LONG, Individually and as Executor of the Estate of Frank J. Sottile, and the Worth Agency, a partnership, Appellants.**

No. 74–1398.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1975.

Decided Oct. 28, 1975.

Leonard L. Long, Jr. (Peter DeLuca, Jr., Robert A. Patterson, Ellison D. Smith, IV, and J. C. Long, Charleston, S. C., on brief), for appellants.

Martin Barenblat, Atty., U. S. Dept. of Justice (J. Stanley Pottinger, Asst. Atty. Gen., U. S. Dept. of Justice, Frank E. Schwelb, Robert N. Eccles, Attys., U. S. Dept. of Justice, and John K. Grisso, U. S. Atty., on brief), for appellee.

Before RUSSELL and FIELD, Circuit Judges, and THOMSEN, Senior District Judge.[*]

FIELD, Circuit Judge:

The Attorney General of the United States instituted this action against the defendants pursuant to Section 813 of the Civil Rights Act of 1968 (hereinafter Act)[1] which authorizes him to bring a civil action to obtain "preventive relief" for violations of Title VIII, the fair housing provisions of the Act. Section 813 reads as follows:

"Whenever the Attorney General has reasonable cause to believe that any per-

---

[*] Honorable Roszel C. Thomsen, District of Maryland, by designation.

[1] Pub.L. 90–284, 82 Stat. 88, 42 U.S.C. § 3613.

son or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court by filing with it a complaint setting forth the facts and requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice or denial of rights, as he deems necessary to insure the full enjoyment of the rights granted by this subchapter."

The case was tried to the court and the district judge, in his findings of fact, determined that the manner in which the defendants had conducted their residential real estate business was violative of Section 804 of the Act[2] and constituted a pattern and practice of racial discrimination. It was further found that the discriminatory policies of the defendants affected a group of persons and raised an issue of general public importance. For these reasons the court concluded that this action under the provisions of Section 813 was appropriate.

In a comprehensive and definitive order the district court enjoined the defendants from engaging in racially discriminatory conduct which denies fair housing to any person, and further required that certain affirmative measures be taken to assure compliance with the Act.[3] In addition to the foregoing measures, the order provided for an award of "monetary damages, to persons who are able to prove that they have been discriminated against by the defendants * * *." The order specified a procedure under which possible victims of the defendants' discriminatory conduct could present their claims for such "monetary damages" to a Special Master. The Special Master was authorized to conduct hearings and make findings with respect to such claims and, where appropriate, recommend to the court that an award of monetary damages be paid to claimant by the defendants.

Recognizing the absence of controlling precedent with respect to monetary damages, the district court, acting pursuant to 28 U.S.C. § 1292(b), certified two questions for our consideration:

(1) Whether, in a suit brought by the Attorney General under Section 3613 of the Act, affirmative relief in the form of monetary damages, may be awarded to the individual victims of discrimination; and,

(2) If so, whether defendants are entitled to a jury trial on the issue of such monetary relief.

We agreed with the district judge on the importance of these questions and permitted the appeal to be taken.

In considering the questions certified by the district court, we note that Title VIII provides three channels for relief from discriminatory housing conduct. First of all, Section 810 of the Act[4] provides that any aggrieved person may file a complaint with the Secretary of Housing and Urban Development who may then attempt to correct the alleged discriminatory practice through administrative action. Second, Section 812[5] authorizes private plaintiffs to bring civil actions and provides that "[t]he court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may reward to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees * * *." While the foregoing statutory sections provide a

---

2. 42 U.S.C. § 3604.

3. The opinion and order of the district court is not officially reported, but may be found in P–H *Equal Opportunity in Housing* ¶ 13,631 (D.S.C. Jan. 14, 1974).

4. 42 U.S.C. § 3610.

5. 42 U.S.C. § 3612.

means for redress by aggrieved individuals, Section 813 authorizes the Attorney General, in a matter of "general public importance," to institute an action seeking "preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order * * *."

A literal reading of Section 813 indicates that the "preventive" relief is equitable in nature and designed to restrain or enjoin "the pattern or practice [of] denial of rights" granted under Title VIII; and we do not think that the phrase "or other order" should be seized upon to broaden the scope of relief to include legal remedies such as damages. Fairly read in their statutory context, these words contemplate an order extending or implementing the equitable relief to be granted. Such an "other order" may be a mandatory injunction such as that in *United States v. West Peachtree Tenth Corporation*, 437 F.2d 221 (5 Cir. 1971), or a declaratory judgment as entered in *United States v. Hunter*, 459 F.2d 205 (4 Cir. 1972).[6] In each of those cases the district court molded its decree to fit the needs of the particular case and the decrees fell within the term "other order" because they served the preventive function of ending discrimination in housing. Under this analysis, it was appropriate for the district court in the present case to follow the precedent of *West Peachtree* and order affirmative action requiring the defendants, among other things, to adopt new and nonracial standards in their business practices; to post all available housing; to display the slogan "Equal Housing Opportunities" on all advertisements and displays; and to make periodic reports on the racial occupancy of their rental property. All of these affirmative requirements were appropriate equitable measures, but in ordering the award of monetary damages to individuals, we think the district court went beyond the bounds of equitable relief and exceeded its authority under Section 813.

**6.** In *United States v. Hunter*, 459 F.2d at 219, n. 19, Judge Sobeloff observed:

"It is difficult to imagine what the phrase 'or other order' possibly encompasses if not declaratory relief."

In reaching our conclusion we, of course, distinguish *monetary damages* from equitable *monetary relief.* We recognize that a court of equity may, and often does, award monetary relief in the form of restitution in order to accomplish justice in a given case. Such relief was recognized by the Court in *Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), which involved an enforcement proceeding under Section 205(a) of the Emergency Price Control Act of 1942,[7] a statute somewhat similar to Section 813. Holding that the court in such a proceeding had power to order restitution of rents which had been collected in excess of the permissible maximum, the Court stated:

"a decree compelling one to disgorge profits, rents or property acquired in violation of the Emergency Price Control Act may properly be entered by a District Court once its equity jurisdiction has been invoked. * * *.

\* \* \* \* \* \*

An order for the recovery and restitution of illegal rents may be considered a proper 'other order' on either of two theories:

(1) It may be considered as an equitable adjunct to an injunction decree * * *.

(2) It may be considered as an order appropriate and necessary to enforce compliance with the Act."

328 U.S. at 398–400, 66 S.Ct. at 1089. It is clear, however, that the Court was addressing itself to the equitable remedy of restitution as distinguished from damages which are properly recoverable in an action at law. The distinction, as we see it, is that "[a] person obtains restitution when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money." Restatement of Restitution § 1, Comment: a, at 12 (1937). Dam-

**7.** 56 Stat. 23, 33.

**1154**

ages on the other hand, are determined by reference to the loss sustained by a victim as the result of wrongful conduct on the part of another. Thus, in *Smith v. Hampton Training School for Nurses*, 360 F.2d 577, 581 n. 8 (4 Cir. 1966), we pointed out that a claim for back pay in an employment discrimination suit "is not one for damages; it is an integral part of the equitable remedy of reinstatement, and should be determined by the court."

In the present case, of course, the effect of the defendants' discriminatory conduct has been to deny blacks an equal opportunity to obtain housing. The damages suffered by the victims of such conduct may be the expense of obtaining nondiscriminatory housing, or of an intangible nature such as the embarrassment attendant upon being relegated to substandard housing. The possibilities are numerous,[8] of course, but they have one thing in common—they are damages properly recoverable in a court of law. In *Curtis v. Loether*, 415 U.S. 189, 195–196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), decided after the trial in the court below, the Court, in considering the question of the right to a trial by jury in an action for damages under Section 812 of the Act, made the following observation which we think bears significantly upon the case before us:

"We think it is clear that a damages action under § 812 is an action to enforce 'legal rights' within the meaning of our Seventh Amendment decisions. See, e. g., *Ross v. Bernhard, supra*, [396 U.S. 531], at 533, 542, [90 S.Ct. 733, at 735, 740]; *Dairy Queen, Inc. v. Wood, supra*, [369 U.S. 469], at 476–477, [82 S.Ct. 894, at 899]. A damages action under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law. More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law." (Footnotes omitted).

The government urges that we analogize the present case to those Title VII employment discrimination cases where the courts have awarded back pay as a part of complete equitable relief. Concededly, such relief has been granted both in private suits under 42 U.S.C. § 2000e–5[9] which specifically provides for back pay, characterizing it as equitable relief,[10] as well as suits brought by the Attorney General under 42 U.S.C. § 2000e–6 which latter section carries no specific provision for back pay.[11] The rationale of these cases is that victims of employment discrimination should be restored to their rightful place by an award

8. *See Jeanty v. McKey and Poague, Inc.*, 496 F.2d 1119 (7 Cir. 1974) (actual expenses as well as emotional distress and humiliation); *Steele v. Title Realty Co.*, 478 F.2d 380 (10 Cir. 1973) (moving and storage costs, out of pocket expenses, emotional distress and humiliation); *Smith v. Sol D. Adler Realty Company*, 436 F.2d 344 (7 Cir. 1970) (loss of civil rights and mental anguish); *Kelly v. Armbrust*, 351 F.Supp. 869 (D.N.D.1972) (inconvenience, mental anguish, humiliation, embarrassment, expenses, and deprivation of constitutional rights).

9. 42 U.S.C. § 2000e–5 reads in part as follows:
"(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirma-

tive action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other *equitable relief* as the court deems appropriate." (Emphasis added.)

10. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) 43 U.S.L.W. 4880; *Hairston v. McLean Trucking Co.*, 520 F.2d 226 (4 Cir. 1975); *Meadows v. Ford Motor Co.*, 510 F.2d 939 (6 Cir. 1975); *Robinson v. Lorrilard Corp.*, 444 F.2d 791 (4 Cir. 1971).

11. *See United States v. Georgia Power Company*, 474 F.2d 906 (5 Cir. 1973); *United States v. Hayes International Corporation*, 456 F.2d 112 (5 Cir. 1972).

of back wages which they would have received but for the wrongful discrimination. In such event, the employer is required to disgorge money which is rightfully owing to the employee and such monetary relief is simply an incident of reinstatement which is authorized by the statute.

Restitution in the form of back wages in these Title VII cases, however, affords no precedent for an award of general legal damages in a Title VIII Fair Housing case. The distinction between the two was drawn by the Court in *Curtis v. Loether, supra,* when it stated:

"Nor is there any sense in which the award here can be viewed as requiring the defendant to disgorge funds wrongfully withheld from the plaintiff. Whatever may be the merit of the 'equitable' characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief." 415 U.S. at 197, 94 S.Ct. at 1010.

In noting this distinction, it is apparent that the Court agreed with the analysis of the Seventh Circuit, *Rogers v. Loether,* 467 F.2d 1110, 1121–22:

"It is not unreasonable to regard an award of back pay as an appropriate exercise of a chancellor's power to require restitution. Restitution is clearly an equitable remedy. As Professor Moore put it:

'In equity, restitution is usually thought of as a remedy by which defendant is made to disgorge illgotten gains or to restore the status quo, or to accomplish both objectives.'

The retention of 'wages' which would have been paid but for the statutory violation (of improper discharge) might well be considered 'ill-gotten gains'; ultimate payment restores the situation to that which would have existed had the statute not been violated.

The payment of compensatory damages in a housing discrimination case, however, is not a return to plaintiff of something which defendant illegally obtained or retained; it is a payment in money for those losses—tangible and intangible—which plaintiff has suffered by reason of a breach of duty by defendant. Such damages, as opposed to rent overcharges, unpaid overtime wages, or back pay, cannot properly be termed restitution." (Footnotes omitted).

In the light of the foregoing, we conclude that in a suit brought by the Attorney General under Section 813 of the Act, general monetary damages may not be awarded to the individual victims of discrimination. Our conclusion on the question of legal damages, however, does not preclude the district judge from consideration of any items which are appropriately the subject of equitable restitution. At this stage the record does not disclose whether any security deposits were required of black but not of white tenants, nor does it indicate whether blacks were required to pay more than whites for comparable housing. Any such discriminatory deposits or overcharges would, of course, properly be the subject of restitution. This, we think, is the clear teaching of *Porter v. Warner, supra,* as well as *Rogers v. Loether, supra.* Accordingly, upon the remand the district court should determine what, if any, sums subject to equitable restitution were deposited or paid, and order appropriate refunds together with interest.

In view of our conclusion upon the question of damages it is unnecessary for us to address ourselves to the jury trial issue. The case is remanded to the district court for further proceedings consistent with this opinion.

*REMANDED.*