UNITED STATES of America, Plaintiff,

v.

BENEFICIAL CORP. and Beneficial Management Corp., Defendants.

Civ. No. 79–1393.

United States District Court,
D. New Jersey.

May 27, 1980.

As Amended June 1, 1980.

---

Michael L. Barrett, Dept. of Justice, Washington, D.C., for plaintiff.

Warren L. Dennis, Washington, D. C., McCarter & English, Newark, N. J., by Francis E. P. McCarter, for defendants.

## OPINION

SAROKIN, District Judge.

This matter is presently before the Court on defendant's motion for partial summary judgment. On May 8, 1978, the United States initiated the underlying suit against Beneficial Corporation and Beneficial Management Corporation (hereinafter "Beneficial"), alleging violations of §§ 1691–1691f of the Equal Credit Opportunity Act (hereinafter "ECOA" or the "Act"), Pub.L. No. 94–239, 90 Stat. 251 *et seq.*, 15 U.S.C. § 1691 *et seq.* (1976) and its implementing provision, Regulation B, 12 C.F.R. § 202. The complaint more specifically alleged that Beneficial had discriminated against credit applicants on the basis of marital status and age and further had failed to supply rejected applicants with the required notice.[1] To rectify these alleged violations, the United States seeks not only injunctive relief but also money damages on behalf of individuals not party to this suit. In its answers to interrogatories, the United States specified that such monetary relief would include damages for pain and suffering, emotional harm, inconvenience, loss of civil rights and out-of-pocket losses. Subsequently, on November 19, 1979, Beneficial filed the present motion for partial summary judgment claiming that, as a matter of law, the Government has no statutory authority to seek legal money damages.[2]

Section 1691e(h) of the ECOA, which is at the center of this controversy, defines the authority of the Attorney General in the following manner:

"When a matter is referred to the Attorney General pursuant to subsection (g) of this section, or whenever he has reason to believe that one or more creditors are engaged in a pattern or practice in violation of this subchapter, the Attorney General may bring a civil action in any appropriate United States district court *for such relief as may be appropriate, including injunctive relief.*"

---

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1345 and 15 U.S.C. § 1691e(h).

2. Initially, the Government raised the possibility that the defendant's motion for partial summary judgment was premature. The parties, however, have agreed that all interests will be served by the Court's determination of this issue at this stage of the litigation. The Government suggests that such a determination might best take the form of an opinion and order rather than the form of a partial summary judgment. The Court has determined, however, that a partial summary judgment is appropriate. *See, United States v. Jefferson Mortgage Corp.,* No. 76–694 (D.N.J. Oct. 5, 1977).

15 U.S.C. § 1691e(h) (emphasis added). The narrow issue before this Court is whether the phrase, "such relief as may be appropriate, including injunctive relief," should be construed as a grant of authority to the Attorney General to seek money damages for non-parties. In order to resolve that issue, this Court has considered the following factors: the plain meaning of the disputed phrase, the legislative history of the ECOA, the total enforcement structure of the ECOA, the circumstances surrounding its enactment and the case law construing similar statutes.[3] *Transamerican Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 688 n. 9, 99 S.Ct. 1946, 1953 n. 9, 60 L.Ed.2d 560 (1979); *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Having done so, the Court concludes that § 1691e(h) of the ECOA does not grant the Attorney General authority to seek legal money damages on behalf of non-parties.

The Government contends that the plain-meaning of the disputed phrase compels a finding that the Attorney General is empowered to seek legal money damages. It further contends that the phrase "appropriate relief" is generally construed as encompassing such damages. The Court finds both arguments to be unpersuasive. It is recognized that the word "including" clear-ly connotes enlargement and, therefore, the phrase implicates a type of relief in addition to injunctive. *Argosy Limited v. Hennigan*, 404 F.2d 14, 20 (5th Cir. 1968). It is not clear, however, whether Congress intended the additional relief to be in the form of other equitable remedies, i. e., declaratory judgment, affirmative action order, or to be in the form of legal remedies, i. e., money damages. Further, the Court finds the contention that "appropriate relief" necessarily includes legal damages is not generally supported by case law.[4]

While the legislative history of the ECOA lends some insight into the proper construction of the phrase, it is not explicit enough to dispose of the issue. The ECOA was enacted in October 1974 in response to increasing discrimination against female credit applicants.[5] S.Rep. No. 589, 94th Cong., 2d Sess., 2 *reprinted in* (1976) U.S.Code Cong. & Admin.News, pp. 403, 403. The Act, in its original form, prohibited discrimination on the basis of sex or marital status [6] in any aspect of a credit transaction.[7] 15 U.S.C. § 1691 (Supp. V 1975). Congress amended the ECOA only five months after its enactment. Equal Credit Opportunity Act Amendments of 1976, 15 U.S.C. § 1691 (Supp.1977) (hereinafter "Amendments"). It was as a result of the Amendments that the Attorney General's provision, § 1691e(h)

---

3. Being an issue of first impression, much of the case law relied upon involves similar "pattern and practice" provisions in other civil rights legislation, i. e., Civil Rights Act of 1964, Title VII, 42 U.S.C. 2000e *et seq.* and Civil Rights Act of 1968, Title VIII, 42 U.S.C. 3601 *et seq.*

4. *Cf. Rogers v. Exxon Research & Eng'r Co.*, 550 F.2d 834 (3d Cir. 1977) (the phrase "legal or equitable relief as may be appropriate" in the Age Discrimination in Employment Act, 29 U.S.C. § 626(1) construed not to include legal damages for pain and suffering or for emotional and psychic distress). The Court finds the Government's reliance on *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) and *Boilermakers v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) to be unpersuasive.

5. While the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (1970) and the Fair Credit Billing Act, *id.* § 1666 (Supp. V 1975) were earlier enactments dealing with consumer credit, the ECOA was the first comprehensive legislative attempt to prevent credit discrimination. Equal Credit Opportunity Acts Amendments of 1976: A Meaningful Step Toward the Elimination of Credit Discrimination, 26 Cath.U.L.Rev. 149, 150 (1976).

6. The Equal Credit Act Amendments of 1976, 15 U.S.C. § 1691 (Supp.1977) expanded the scope of prohibited discrimination to include discrimination on the basis of race, color, religion, national origin, age, receipt of public assistance benefits or the good faith exercise of any right under the Consumer Credit Protection Act. 15 U.S.C. § 1691(a).

7. The Act authorized the Board of Governors of the Federal Reserve System to develop implementing regulations and pursuant to that authority, Regulation B was promulgated. 15 U.S.C. § 1691b (Supp. V 1975).

was added to the Act.[8] Unfortunately, neither the hearings[9] nor the congressional report[10] regarding the Act or the Amendments explicitly define the type of relief the Attorney General would be authorized to seek. Three observations, however, can be gleaned from the legislative history. First, legal money damages were never discussed in the context of the Attorney General's provision. Second, the relief that was discussed in regard to that provision was either equitable relief or monetary relief as an adjunct to equitable relief such as the award of back pay under Title VII as a form of restitution.[11] Finally, Congress was resolute and clear that regardless of the addition of the Attorney General's provision, the private cause of action was to remain the chief enforcement tool of the Act.[12] S.Rep. No. 589, *supra*, at 13.

Analysis of the total enforcement network of the ECOA is useful in determining the proper construction of § 1691e(h). The extensive nature of that network provides the aggrieved credit applicant with numerous avenues of redress.[13] This Court, there-

---

**8.** Other major changes to the Act which were brought about by the amendments were the broadening the scope of discriminatees, 15 U.S.C. § 1691(a) (Supp.1977), *see* note 6 supra; raising the ceiling of potential recovery of punitive damages in class actions, *id.* § 1691e(b); extending the statute of limitations for private suits for one year after the commencing of a proceeding or action by an agency or the Attorney General, *id.* § 1691e(f); and establishing the Consumer Advisory Council, *id.* § 1691b(b).

Section 1691e(h) was authored by the Department of Justice. Although the Attorney General's provision was first incorporated into an earlier version of the original Act which was introduced in the House of Representatives in May 1974, it did not survive. Hearing on Credit Discrimination before the Subcomm. in Consumer Affairs of the House Comm. on Banking and Currency, 93d Cong., 2d Sess. (1974) (hereinafter "House Hearings, ECOA, 1974"). Nevertheless, the legislative debates regarding that earlier Attorney General provision are instructive.

**9.** House Hearings, ECOA, 1974, *supra* note 8; Hearing on Equal Credit Opportunity Amendments before the Subcomm. on Consumer Affairs of the Senate Comm. on Banking, Housing and Urban Affairs, 94th Cong., 1st Sess. (1975) (hereinafter "Senate Hearings, ECOA Amendments"); Hearings to Amend the Equal Credit Opportunity Act of 1974 before the Subcomm. on Consumer Affairs of the House Comm. on Banking, Currency and Housing, 94th Cong., 1st Sess. (1975) (hereinafter "House Hearings, ECOA Amendments").

**10.** S.Rep. No. 589, 94th Cong., 2d Sess., *reprinted in* (1976) U.S.Code Cong. and Admin.News, p. 403.

**11.** House Hearings, ECOA, 1974, *supra* note 8, at 69. Senate Hearings, ECOA Amendments, *supra* note 9, at 321–22.

**12.** Based on the analysis of the legislative history, Beneficial submitted the following arguments:

A. One of the concerns of the legislators during the debates of the ECOA Amendments was the effect that the recently decided case of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) would have on the effectiveness of class actions under the ECOA. The legislators discussed the need to find alternatives to the class action. S.Rep. No. 589, *supra*, note 10, at 14. Beneficial argues that if, in fact, the Attorney General were authorized to sue for individual damages, the Committee would not have needed to discuss alternatives to the class action or that they would have, at least, discussed the Attorney General's alleged power to seek damages for individuals as a possible solution.

B. The Amendments extended the statute of limitations for private suits one year after the commencement of an action by the Attorney General. *See* note 8 *supra*. Beneficial contends that if the Attorney General, in fact, was authorized to seek individual damages, extension of the statute of limitations would have been unnecessary.

C. Another area in the Amendments which consumed a great deal of congressional attention was the raise in the ceiling of recovery in the class action suit. 121 Cong.Rec. 16745 (1975) (*see* note 8 *supra*.) Beneficial argues that it would not be consistent for Congress to be so specific and concerned about the total recovery ceiling in the class actions while at the same time contemplate that the Attorney General could sue and aggregate individual claims with no ceiling at all.

Although the Court finds all of the foregoing arguments persuasive and has incorporated them into the fabric of its reasoning, they are not essential to this determination and did not provide the basis for the Court's holding.

**13.** The components of the enforcement scheme of the ECOA, in addition to § 1691e(h), include § 1691c which grants various federal agencies administrative enforcement responsibility; § 1691e(a, c) which grants the aggrieved credit applicant the right to sue individually or as a member of a class for actual or punitive dam-

fore, is reluctant to imply a remedy where one is not explicitly granted and may not be necessary. Further, the specificity of the other enforcement provisions, within the Act makes it difficult for this Court to accept the contention that Congress, while intending legal money damages in § 1691e(h), inadvertently failed to specify such.[14]

Although there is at this time a paucity of precedent with respect to the ECOA, analysis of the enforcement network of the analogous Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.* (hereinafter "FHA"), has resulted in similar conclusions. The FHA contains a "pattern and practice" provision, 42 U.S.C. § 3613, similar to the one presently at issue.[15] In addition, the FHA has an equally extensive and specific enforcement scheme.[16] It has been held that based on the structure of the enforcement scheme of the FHA, authority for the Attorney General to seek legal money damages should not be judicially implied. *Northside Realty Associates v. United States,* 605 F.2d 1348, 1357–58 (5th Cir. 1979); *United States v. Simon,* No. 76–2885, memorandum decision at 2 (E.D.Pa. Jan. 31, 1978) *aff'd o. b.* 612 F.2d 575 (3d Cir. 1979); *United States v. Jefferson Mortgage Corp.,* No. 76–694, let-

ter op. at 5 (D.N.J. Oct. 6, 1977). Applying the same analysis to the ECOA, this Court is persuaded that in light of Congressional silence, there is no need to imply an additional remedy under the ECOA. If Congress had intended the Attorney General to have such authority, it would have so specified.[17]

There are other holdings from the FHA cases that this Court has found instructive and has relied upon in establishing the foundation for its holding in the instant case.[18] The FHA holdings refute many of the premises which the Government urges this Court to apply regarding the ECOA. First, there is a distinction between remedies which are appropriate to actions at law and those which are appropriate to actions in equity. *Curtis v. Loether,* 415 U.S. 189, 195–97, 94 S.Ct. 1005, 1008–09, 39 L.Ed.2d 260 (1974). The type of relief which Congress intended in § 3613 of the FHA, which is very similar to § 1691e(h) of the ECOA, is clearly equitable relief.[19] *United States v. Mitchell,* 580 F.2d 789, 792–93 (5th Cir. 1978); *United States v. Long,* 537 F.2d 1151, 1154 (4th Cir. 1975), *cert. denied,* 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976); *United States v. Simon, supra,* No. 76–2885, memorandum decision at 2; *Unit-*

---

ages as well as for injunctive or declaratory relief; § 1691e(d & f), which facilitates the bringing of suits by authorizing attorney's fees and costs to the successful plaintiff and by permitting access to the federal district court regardless of the amount in controversy; and § 1691e(f) which extends the statute of limitations for the aggrieved applicant for one year after a proceeding or action is initiated by an agency or the Attorney General.

**14.** Consider the specific ceiling on punitive damages in § 1691e(b). *See* also note 12 *supra.*

**15.** 42 U.S.C. § 3613 states in pertinent part:
   "Whenever the Attorney General has reasonable cause to believe that any person . . is engaged in a pattern or practice of resistance to full enjoyment of any rights granted by this subchapter . . . he may bring a civil action . . . requesting such preventative relief, including an application for a permanent or temporary injunction, restraining order or other order . . .."
   *Id.*

**16.** 15 U.S.C. § 3612(a) and (c). Compare enforcement scheme in ECOA, note 13 *supra.*

**17.** Particularly regarding damages for pain and suffering which are not universally accepted, it is unlikely that Congress would have remained silent and further assumed that such damages would be implied. *See Rogers v. Exxon Research & Eng'r Co.,* 550 F.2d at 840.

**18.** *Cf. Missen v. Kellogg-Citizens National,* No. 78–C–671 (E.D.Wis. Aug. 10, 1979) (court analogized ECOA and FHA in its determination that a jury trial is required under ECOA).

**19.** The Government argues that this Court should not rely on the FHA cases which have construed 42 U.S.C. § 3613 as defining only equitable relief. They contend that such a construction was based on the phrase "preventative relief" which is not used in 15 U.S.C. § 1691e(h). The Court finds the analysis of § 3613 in the FHA to be equally applicable to § 1691e(h) of the ECOA and not constrained necessarily by the phrase "preventative relief".

ed States v. Jefferson Mortgage Corp., supra, No. 76–694 at 4. Monetary relief given as an adjunct to equitable relief, i. e., an award of back pay in a Title VII employment discrimination case, is a restitutionary equitable remedy. Restitution in a Title VII case, therefore, does not establish *precedent* for an award of general legal damages in other areas of civil rights litigation. *Curtis v. Loether*, 415 U.S. at 197, 94 S.Ct. at 1009; *United States v. Mitchell*, 580 F.2d at 792–93; *United States v. Long*, 537 F.2d at 1154–55; *United States v. Jefferson Mortgage Corp., supra*, No. 76–694 at 4. Finally, allowing the Attorney General to seek legal money damages is not required to effectuate the purpose of the legislation, when a private cause of action is available and policy considerations are not sufficient to imply such a grant in view of Congressional silence. *Northside Realty Associates v. United States*, 605 F.2d at 1356; *United States v. Jefferson Mortgage Corp., supra*, No. 76–694 at 5.

The circumstances which existed at the time § 1691e(h) was being debated and finally enacted are disputed by the parties. The parties agree that the Court must consider the status of the law as it existed at the time of the enactment of the legislation as opposed to after-acquired insight and further, that the legislators are presumed to be cognizant of the most recent judicial decisions. *Cannon v. University of Chicago*, 441 U.S. at 710–11, 696–97, 99 S.Ct. at 1964–65, 1957–58. Prior to the House and Senate hearings on the ECOA Amendments, two district courts had held that the Attorney General pursuant to § 3613 of the FHA had authority to seek legal damages. *United States v. Long*, P.H.E.O.H.Rep. Para. 13, 637 (D.S.C.1974), *rev'd* 537 F.2d 1151 (4th Cir. 1975), *cert. denied* 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976); *United States v. West Suburban Board of Realtors*, P.H.E.O.H.Rep. Para. 13, 641 (N.D.Ill.1974). The Government, therefore, contends that the legislators had before them a perfect record entitling the Attorney General to seek legal damages. Beneficial argues, however, that the legislators were equally aware of the tenuous nature of those decisions and that in *Long*, the district court pursuant to 28 U.S.C. § 1292(b) had moved, *sua sponte*, to certify for appeal the issue of the extent of the Attorney General's authority.

The Fourth Circuit reversed the district court and held that § 3613 of the FHA did not authorize the Attorney General to seek such damages. That decision (the only appellate decision on that issue) was filed on October 28, 1975, well in advance of the creation of the Senate Report on the Amendments (December 12 and 15, 1975) and their final enactment (March 23, 1976). Based on these facts, this Court is satisfied that when § 1691e(h) was enacted, Congress was aware of the Fourth Circuit's decision in *Long* and that it proceeded under the assumption that § 1691e(h), like § 3613, would not authorize the Attorney General to seek legal damages.

Finally, this Court has considered the practical problems that would be created if the Attorney General were granted such authority. Beneficial contends that an unprecedented and thoroughly unmanageable burden would be placed upon the courts, particularly in attempting to issue notice to affected persons; to divide any monetary award; to prove exact individual damages especially for items such as loss of civil rights, pain and suffering, or inconvenience; to establish the rights of parties in settlements and to determine the impact of *res judicata* or collateral estoppel. The Government counters by contending that similar problems have arisen and have been overcome in other class action litigation. They further contend that guidance is available from the back-pay cases under Title VII and by reference to Rule 23 of the Federal Rules of Civil Procedure.

In response to these specific contentions, the Court does not find reference to the back-pay cases to be the panacea for the burdens which would be created if the Government prevailed. An award of back-pay is far more susceptible of measurement that an award for pain and suffering or inconvenience. Nevertheless, the Court acknowledges that authority to seek such

damages should not be denied merely because they would be difficult, though not impossible, to prove. However, in the absence of a clear showing that Congress intended that the Attorney General have such power, it should not be presumed or implied. The Court recognizes that the complexities in submitting proof of individual claims for pain and suffering, emotional harm, inconvenience, and loss of civil rights would exist when such claims were presented in separate or class actions, but Congress may well have considered that such complexities should not involve the office of the Attorney General and should be left to individual claimants to pursue, either separately or as part of class actions.

The Attorney General argues that it is unlikely because of the size of the claims involved and the difficulty in proving same that there will be such actions by individual claimants or class actions representing such plaintiffs. That may well be, but it is for the Congress and not the court to consider such circumstances in determining whether or not the United States should be authorized to pursue such claims. In determining whether or not the Government's right to pursue such claims should be implied, the Court considered the following self-imposed leading questions: If the Justice Department had intended that the Attorney General seek legal damages for a mass of persons not party to the suit, why did it not draft a more specific provision which would have provided for the foreseeable problems?[20] If Congress had intended § 1691e(h) to be construed differently than the interpretation accorded a similar provision by the Fourth Circuit in *Long*, why wasn't the intended deviation specified in the Senate Report? If Congress had intended § 1691e(h) to be applied in a manner which would have precipitated obvious practical problems, why were those eventualities not discussed in the hearings?[21] Without convincing answers to the foregoing questions, the Court must conclude that it was neither the intention of the Department of Justice nor the Congress to have § 1691e(h) so applied.[22]

In conclusion, the issue before this Court is not whether the Attorney General should have the right to seek legal money damages for individuals under the statute, but whether Congress intended to confer such right by virtue of said legislation. The Government cannot and should not run the gauntlet for every deprivation or interference with individual rights. There are many instances where the protection and pursuit of such rights are better left in the hands of those who hold such rights. Whether the Government carries the banner of enforcement is a policy decision for Congress and not the courts to render.

For all of the above-stated reasons, this Court finds 15 U.S.C. § 1691e(h) authorizes the Attorney General to seek a wide range of equitable remedies, but not legal money damages as requested in the present suit. Defendant's motion for partial summary judgment is granted.

**20.** Consider the specificity of 15 U.S.C. § 1691e(b) which defines the damages in an individual or class action suit.

**21.** Consider the debate regarding the change in the ceiling of allowable punitive damages under 15 U.S.C. § 1691e(b). *See* note 12 *supra*.

**22.** Legislation, H.R. 5103, presently pending in Congress and proposed by the Department of Justice would expressly permit the Attorney General to recover individual damages pursuant to a clear and definite scheme of limitations and procedures for effective litigation. Beneficial has brought this legislation to the attention of the Court and argues that if Congress had intended in 1976 that the Attorney General have such authority under § 1691e(h) then the present legislation would, in large part, be unnecessary and further that such legislation would not be termed "new" and "novel".