**UNITED STATES of America, Plaintiff,**

v.

**RENT AMERICA, CORP., Skyline Rental Systems, Inc., Jay Howard Magid, and Hal Eubanks, etc., Defendants.**

**No. 89–6188–CIV.**

United States District Court,
S.D. Florida.

April 4, 1990.

Paul F. Hancock, Chief, Housing & Civ. Enforcement Section, Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Gerald S. Hartman and Gregory Homer, Andrew, Kill, Olich & Ochinsky, Washington, D.C., and Hal Eubanks, Winterhaven, Fla., and Jay Howard Magid, Fort Lauderdale, Fla., for defendants.

## ORDER ON DEFENDANTS' MOTION TO STRIKE

PAINE, District Judge.

This matter comes before the court primarily upon the Defendants' Motion to Strike Claims (DE 25).

## FACTUAL BACKGROUND

This action was filed on March 13, 1989 by the United States pursuant to the provisions of the newly amended Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988), codified at 42 U.S.C.A. §§ 3601–3619 (West Supp.1989)[1] The complaint alleges that the defendants, owners and operators of residential apartment complexes in the Southern District of Florida, have engaged in a pattern or practice of rental discrimination against persons on the basis of race or color. The Complaint further states that such discrimination in the rental of dwellings is in violation of Section 804(a)–(d) of the Fair Housing Act, codified at 42 U.S.C.A. §§ 3604(a)–(d) (West Supp.1989).

Specifically, the complaint alleges that the defendants have engaged in a pattern or practice of discrimination by:

(a) Refusing to rent apartments an otherwise making dwellings unavailable to black persons because of race or color, in violation of 42 U.S.C. § 3604(a);

(b) Imposing different terms and conditions in the rental of dwellings on account of race or color, in violation of 42 U.S.C. § 3604(b);

(c) Making statements with respect to the rental of a dwelling that indicates a preference, limitation or discrimination on the basis of race or color, in violation of 42 U.S.C. § 3604(c); and

(d) Representing to black persons because of race or color that certain dwellings are not available for inspection or rental when such dwellings are in fact available, in violation of 42 U.S.C. § 3604(d).

This initial complaint sought injunctive relief pursuant to 42 U.S.C.A. § 3614(d)(1)(A) (West Supp.1989), monetary damages for victims of the discrimination pursuant to 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989), and a civil penalty pursuant to 42 U.S.C.A. § 3614(d)(1)(C) (West Supp.1989).

On April 21, 1989 the United States filed an amended complaint. The Amended Complaint sought the same injunctive relief as well as the same civil penalty. However, the provision seeking monetary damages was amended to expressly request both compensatory damages for economic loss, emotional distress, and deprivation of civil rights and punitive damages under 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989).

In addition to denying the allegations of unlawful housing discrimination, the Defendants affirmatively raised the defense that the United States was not authorized by the Fair Housing Amendments Act of 1988 to seek the additional relief it sought in the amended complaint.

Since the filing of the complaint, discovery has taken place. On July 17, 1989, the Defendants served interrogatories upon the government inquiring about the details regarding the alleged acts of housing discrimination. Specifically, the Defendants inquired about the actual time frame within which the alleged acts occurred. The United States filed initial answers and supplemental answers to the interrogatories; fourteen alleged victims of discrimination were identified. The Defendant notes that all of these alleged acts of discrimination occurred before March 13, 1989, the effective date of the statute.

Accordingly, the Defendant filed the instant Motion to Strike. The resolution of the Defendants' Motion to Strike requires

---

1. It is notable and relevant that the filing date of this action, March 13, 1989, is also the effective date of the Fair Housing Amendments Act of 1988.

the determination of the following two issues:

1. Can the Fair Housing Amendment Act of 1988, which expressly authorizes the United States to seek monetary relief, including both damages and civil penalties, be applied retroactively to discrimination which is alleged to have occurred prior to the effective date of the Amended Act?

2. Does the term "monetary damages" as used by Congress in 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989) anticipate the award of punitive damages and compensatory damages for emotional distress, or is it limited to the award of monetary relief for economic loss and civil penalties?

At the onset, the court notes that this is a case of first impression regarding the application of the Fair Housing Amendments Act of 1988.

### Statutory History

A proper analysis of the above issues must necessarily commence with a comparison between the Fair Housing Act of 1968, codified at 42 U.S.C.A. §§ 3601–3619 (West 1977) (hereafter the "Former Act"), and the Fair Housing Amendment Act of 1988, codified at 42 U.S.C.A. §§ 3601–3619 (West Supp.1989) (hereafter the "Amended Act").

In the present action which was initiated by the Attorney General, the analysis must be focused on the comparison between the former section entitled "Enforcement by [the] Attorney General," 42 U.S.C.A. § 3613 (West 1977), and its amended counterpart section entitled "Enforcement by the Attorney General," 42 U.S.C.A. § 3614 (West Supp.1989).

### The Former Act

The applicable section of the Former Act provided that:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general

public importance, he may bring a civil action in any appropriate United States district court by filing with it a complaint setting forth the facts and requesting such *preventive relief,* including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice or denial of rights, as he deems necessary to insure the full enjoyment of the rights granted by this subchapter.

42 U.S.C.A. § 3613 (West 1977). In interpreting this provision of the Former Act, the courts were also called upon to determine precisely what relief could be sought by the Attorney General in a housing discrimination case.

In *United States v. Long,* 537 F.2d 1151 (4th Cir.1975), *cert. denied,* 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976), the court addressed the issue of whether "monetary damages" could be awarded in a suit brought by the Attorney General pursuant to the Former Act. The court distinguished legal monetary damages which were not expressly provided for in the statute, from other forms of equitable monetary relief, such as restitution. *Id.* at 1153. Employing a literal reading of the statute, the court concluded that legal monetary damages could not be awarded under the statute which only expressly provided for equitable relief.

Addressing the same issue, another court refused to adopt the government's contention that the Former Act permitted the Attorney General to recover money damages for private parties. *United States v. Mitchell,* 580 F.2d 789 (5th Cir.1978). The *Mitchell* court expressly rejected the government-urged broad interpretation of the Former Act when it said:

> [T]he Attorney General is empowered to seek only equitable remedies. To broaden this limited grant of authority to include the power to seek legal damages would be a substantial departure from principles of equity and statutory interpretation.

we find no support in the language or legislative history of [the Former Act] for extending the powers of the Attorney General by implication.

*Id.* at 793.

It was clear under the Former Act that Congress had intended to limit the power of the Attorney General to the pursuit of equitable remedies only. Accordingly, the enforcement of the Former Act by the Attorney General was limited by its own terms. However, it is now relevant to note that when the courts were called upon to interpret the Former Act, they did not limit the type of equitable damages to only those expressly mentioned in the statute. In fact, the courts recognized that the language of the statute gave the court the authority to extend the award of equitable relief to types not expressly provided for in the statute. Specifically, the *Long* court said:

Our conclusion on the question of legal damages, however, does not preclude the district judge from consideration of *any items* which are appropriately the subject of equitable restitution.

*United States v. Long, supra,* at 1155, [emphasis added], citing *Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (held that once a court's equitable jurisdiction has been invoked, the court had the power to order restitution even if the statute did not clearly set forth such a provision).

Finally, the former Act was enacted by Congress on April 10, 1968 and the law went into effect on January 1, 1969. Pub.L. 90–284, Title VIII, § 812, Apr. 11, 1068, 82 Stat. 88. Addressing the retroactive application of the statute to cure pre-Act patterns and practices of discrimination, one court held that:

When there is a finding of a pre-Act pattern or practice of discrimination, and little or no evidence indicates a post-Act change in such pattern or practice up to the time suit is filed, a strong inference that the pre-Act pattern or practice continued after the effective date of the Act arises.

*United States v. West Peachtree Tenth Corp.,* 437 F.2d 221 (5th Cir.1971), citing *United States v. Sheet Metal Workers, Intern. Ass'n, Local Union No. 36,* 416 F.2d 123, 127 (8th Cir.1969) (decided under the Fair Employment Practices Act to support the proposition that there need be no showing of an independent post-Act pattern or practice).

Although the *Peachtree* court cautioned that a pre-Act pattern alone did not create a *prima facie* case of post-Act pattern or practice, the court held that such a fact possessed significant probative value. *Peachtree, supra,* at 227. Finally, on the issue of retroactive application of the Former Act, the court concluded that "the absence of persuasive indications that a cessation in an admitted pre-Act pattern or practice occurred" was a factor used to determine whether the government had established a pattern or practice of racial discrimination in renting after the effective date of the Act. *Id.* at 228.

### The Amended Act

Twenty years after the Former Act was passed, Congress amended the act to include express language providing for the award of monetary damages in housing discrimination suits brought by the Attorney General. In so doing, the legislature expressly extended the statute to include the very provisions which the courts had refused to imply from the language of the Former Act.

The applicable sections of the Amended Act state:

**(a) Pattern or practice cases**

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court.

**(d) Relief which may be granted in civil action under subsections (a) and (b)**

**(1)** In a civil action under subsection (a) or (b) of this section, the court—

**(A)** may award such preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to assure the full enjoyment of the rights granted by this subchapter;

**(B)** *may award such other relief as the court deems appropriate, including monetary damages to persons aggrieved; and*

**(C)** may, to vindicate the public interest, assess a civil penalty against the respondent—

. . . .

42 U.S.C.A. §§ 3614(a), (d) (West Supp. 1989) [emphasis added].

The court immediately notes that the above-cited subsection (a) of the Amended Act remains unchanged from its former counterpart. Furthermore, the terms of subsection (d)(A) are virtually identical to the terms of the Former Act; the section clearly provides for equitable relief in a suit initiated by the Attorney General. Additionally, the court finds that the terms of subsection (C) are not in controversy in this matter.[2]

Accordingly, the focus of the Defendants' Motion to Strike and, therefore, this opinion, is the interpretation of 42 U.S.C.A. §§ 3614(d)(1)(B) (West Supp.1989).

Finally, Congress expressly provided that, rather than take immediate effect, the Amended Act would be "effective on the 180th day beginning after September 30, 1988." Pub.L. 100–430, § 13(a), Sept. 13, 1988, 102 Stat. 1636. Accordingly, as note

above, the statute went into effect on March 13, 1989.

### *Retroactive Application of the Fair Housing Amendment Act of 1988*

■ The Defendant vigorously contends that since the Government has failed to identify any acts of discrimination occurring after the effective date of the statute, the prayers for relief pursuant to the newly amended sections should be stricken. Specifically, the Defendant challenges the retroactive application of the sections providing for an award of monetary damages and a civil penalty. 42 U.S.C.A. §§ 3614(d)(1)(B), (C) (West Supp.1989).[3]

As set out earlier, the court must determine whether the Fair Housing Amendment Act of 1988, which expressly authorizes the United States to seek monetary relief, including both damages and civil penalties, may be applied retroactively for housing discrimination which is alleged to have occurred prior to the effective date of the Amended Act.

In *Bradley v. Richmond School Board,* 416 U.S. 696, 710, 94 S.Ct. 2006, 2015, 40 L.Ed.2d 476 (1974), the Supreme Court determined that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

*Bradley* was a school desegregation case. Although there was no explicit statutory authorization for an award of attorneys fees in that type of case at the time the litigation was *concluded* at the trial level, the district court awarded the prevailing Plaintiffs expenses and attorneys fees. Following the initial submission of the case to the Court of Appeals, but before the court rendered its decision, Congress enacted Section 718 of the Education Amend-

---

**2.** While the Defendant generally objects to the retroactive effect of this section, discussed infra, he does not lodge an objection to the actual meaning of the language of 42 U.S.C.A. § 3614(d)(1)(C) (West Supp.1989).

**3.** The court notes that the government is also seeking a remedy pursuant to 42 U.S.C.A. § 3614(d)(1)(A) which provides for equitable re-

lief in a housing discrimination suit brought by the Attorney General. This remedy has been available in this type of case since the enactment of the original Fair Housing Act in 1968, see discussion, *supra.* Accordingly, the Defendant has neither challenged this aspect of the government's case nor advanced argument regarding the enforcement of same.

ment Act of 1972. The newly amended statute granted a federal court the authority to award attorneys fees in school desegregation cases.

The Fourth Circuit Court of Appeals was then faced with the same issue which we must determine in the present case: whether a statute should be given retroactive effect so as to require application to events occurring before its effective date. The Appellate Court held that the newly amended statute was not applicable to the pending case and, therefore, the statute did not sustain the allowance of attorneys fees.

In the decision vacating and remanding the order of the Fourth Circuit, the Supreme Court began its analysis by quoting Mr. Chief Justice Marshall in *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801):

> It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws....

*Bradley* 416 U.S. at 710, 94 S.Ct. at 2015, quoting *Schooner Peggy, supra.*

In an earlier application of the *Schooner Peggy* rule, the Supreme Court remanded a case over which it had already granted certiorari. *Thorpe v. Housing Authority of City of Durham*, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967). The Court held that the Department of Housing and Urban Development's new procedural prerequisite for an eviction warranted the remand to state court for further proceedings as might be necessary in light of the newly enacted law. *Id.* The state court did not change the outcome of the case pursuant to the new directive from H.U.D. Accordingly, in *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Court held that even where the newly enacted law does not expressly state that it is to be applied to a pending cases, it is to be given recognition and effect. *Id* at 282, 89 S.Ct. at 526.

Based on the authority of *Schooner Peggy* and *Thorpe*, the *Bradley* court expressly rejected the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature. *Bradley*, 416 U.S. at 714, 94 S.Ct. at 2017. Rather, the Court set out a formula for courts to employ when making the critical determination of the retroactivity of statutes. Specifically, the Court held that such a determination is to be made only after a consideration of: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley* at 718, 94 S.Ct. at 2019.

The facts of the present case clearly establish the first element of the *Bradley* test. When considering the nature and identification of these parties under the *Schooner Peggy* standard, it is clear that housing discrimination litigation is of a kind different from "mere private cases between individuals." *See Bradley* at 718, 94 S.Ct. at 2019 citing *Schooner Peggy* (holding that a school desegregation case is not merely a private case between individuals). Additionally, the Court held that in cases involving "great national concerns ... the court must decide according to existing law." *Id.* Certainly, even the Defendants cannot deny that the present case is of great national concern and, therefore, of the type anticipated by the Supreme Court in *Schooner Peggy* and more recently affirmed in *Bradley*.

Regarding the second element of the *Bradley* test, the nature of the parties' rights, the law is that a court should not apply a statute retrospectively when to do so would "infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley* at 718, 94 S.Ct. at 2019.

In the present case, since the substantive aspects of the Fair Housing Amendment Act of 1988 were in effect since 1968, the court can find no right of the Defendant which would be deprived from the retroactive effect of the new methods of enforcement of the substantive provisions of the

Amended Act. The Defendants' alleged discriminatory practices were unlawful before the effective date of the 1988 Act; they have no "right" to avoid new penalties for the conduct which was unlawful at the time it occurred. *See United States v. Oakwood Downriver Medical Center,* 687 F.Supp. 302, 307 (E.D.Mich.1988). Accordingly, the second element of the *Bradley* test is also sufficiently satisfied under the present set of facts.

Finally, the third element of the *Bradley* test requires the court to evaluate the impact of the new law upon the Defendants rights. Specifically, the court must determine whether new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard. *Bradley* at 720–721, 94 S.Ct. at 2020–2021. In the present case, the court finds that the application of the enforcement provisions of the newly amended version of the 20 year old Housing Act neither increases the burden nor changes the substantive obligations of the Defendants.

The court is persuaded by the fact that even under the Former Act, discriminatory conduct could have resulted in the imposition of money damages via the private enforcement provision. *See* 42 U.S.C.A. § 3612(c) (West 1977). Additionally, pursuant to 42 U.S.C.A. § 1982 racial discrimination in housing was illegal before the effective date of the Fair Housing Amendment Act of 1988. Under that statute, a defendant who employed a discriminatory housing practice before the effective date of the Amended Act could have been subject to an award of both actual and punitive damages. *See e.g. Philips v. Hunter Trails Community Assn.,* 685 F.2d 184 (7th Cir. 1982).

Accordingly, the court finds that retroactive application of the statute does not impose additional nor unforeseeable obligations on the Defendants in the present case. In light of these findings, the final element of the *Bradley* test is satisfied.

It is also compelling that, under the authority of *Bradley,* had the government commenced the present action before the

effective date ·of the statute, the court would have been *required* to apply the new law to the instant facts. Even had the case been pending at the appellate level, it could have been remanded to the district court for application of the new law, as was the case in *Bradley.* At this very early stage of litigation, this court must apply the new procedural and enforcement provisions of the statute.

The court should note for the record that it is not persuaded by the Defendants' remaining arguments against the retroactive application of the Amended Act. The Defendants concede that although the Ex Post Facto Clause of the Constitution applies only to criminal statutes,[4] it should prevent the award of punitive damages and civil penalties in the present case. The court does not agree that the retroactive application of the damages provisions in this case is the type of conduct prohibited by the Ex Post Facto clause. It has become generally accepted that " 'legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.' " *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984), quoting *Usury v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892–2893, 49 L.Ed.2d 752 (1976).

The Defendants' final argument is that retroactive application of the Amended Act violates the due process clause of the Constitution. The court finds this argument to be equally without merit. The basic principle of the due process clause is to protect parties with vested rights from unfair surprise or harsh consequences. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515, n. 13, 52 L.Ed.2d 92 (1976). The court finds that even prior to the effective date of the Amended Act, the Defendants had no vested right to engage in discriminatory practices. Additionally, as discussed more fully

---

**4.** *Harisiades v. Shaughnessy,* 342 U.S. 580, 594,     72 S.Ct. 512, 521, 96 L.Ed. 586 (1952).

above, even before this statute took effect, the Defendants' alleged conduct could have resulted in the imposition of money damages via the private action section of the Former Act or in a 42 U.S.C. § 1982 suit.

Therefore, no manifest injustice having been found under *Bradley,* this court concludes that the newly amended procedural aspects of the Fair Housing Amendment Act of 1988 may be applied retroactively. The Defendants' Motion to Strike on these grounds is, therefore denied.

### *"Monetary Damages"*

■ As noted above, the second issue this court must address is whether the term "monetary damages" as used by Congress in 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989) anticipates the award of punitive damages and compensatory damages for emotional distress.[5] The Defendant argues that the term is limited to the award of monetary relief for economic loss and civil penalties. The amended provision of the statute provides that a court "may award such other relief as the court deems appropriate, including monetary damages to persons aggrieved...." 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989).

Although the Plaintiff relies heavily on the legislative history in support of its contention that the term "monetary damages" was intended to include both actual and punitive damages, the court finds that such an analysis is not necessary in the present case. The court must look first to the statutory language adopted by Congress; resort to the legislative history is appropriate only where the statutory language is not clear. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

First, the court finds no persuasive authority for restricting the term "monetary damages" to actual damages only. If Congress had intended the term to be limited it could have chosen the term "actual dam-

ages" rather than "monetary damages." Rather, Congress opted to use the more general, all inclusive term of "monetary damages." While it is true that Congress could have expressly stated "both actual and punitive damages," the court finds that the all inclusive term of "monetary damages" is clear on its face.

A recent Supreme Court case on another matter has useful application here. In *H.J. Inc. v. Northwestern Bell Telephone Co.,* ─── U.S. ───, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court was called upon to determine the meaning of the word "pattern" as it was used by Congress in the RICO statute. The court determined that void express textual definition of a word, Congress intended a flexible approach to its definition. *Id.* 109 S.Ct. at 2899–2900. The court went on to emphasize that such an approach would necessarily require the assumption that the legislative intent is adequately expressed by the ordinary meaning of the words Congress chose to use. *Id.* Finally, the Court concluded that Congress intended a "commonsense" approach to the definition of the word it ultimately included in the statute. *Id.* at 2899.

In the present case, this court will employ this Supreme Court's "common-sense" approach to the definition of the term "monetary damages." In the present case, the possible consequences of the Defendants' alleged discriminatory conduct has been to deny blacks an equal opportunity to obtain housing. As the *Long* court noted:

> The damages suffered by the victims of such conduct may be the expense of obtaining nondiscriminatory housing, or of an intangible nature such as the embarrassment attendant upon being relegated to substandard housing. The possibilities are numerous, of course, but they have one thing in common—*they are damages properly recoverable in a court of law.*

---

5. Until recently, there was been no case-law interpreting this section of the Fair Housing Amendment Act of 1988. However, in an unpublished order recently entered by the United States District Court for the Eastern District of

Virginia, the court held that the term "monetary damages" as used in 42 U.S.C. § 3614(d)(1)(B) may include punitive damages. *United States v. Southern Management, Inc.,* Civil Action 90–58–A (March 23, 1990).

537 F.2d at 1154 [citations omitted, emphasis added]. In that case, of course, the court was called upon to determine if Congress intended the express grant of equitable relief to include "legal relief," such as money damages.[6]

A private plaintiff who had suffered a loss due to discriminatory practices under the Former Act was properly compensated for such loss by an award of actual damages. *See Jeanty v. McKey and Poague, Inc.*, 496 F.2d 1119 (7th Cir.1974). The *actual damages* took the form of monetary damages. *Id.* Further, a Plaintiff who was a victim of discrimination and had suffered both out of pocket damages and humiliation was properly awarded both actual damages and damages for emotional distress. *See Steele v. Title Realty Co.*, 478 F.2d 380 (10th Cir.1973). The *damages for emotional distress* took the form of monetary damages. *Id.* Finally, even where there was no actual loss, a private Plaintiff under the Former Act was awarded punitive damages where the court made a finding of discrimination. *See Rogers v. Loether*, 467 F.2d 1110 (7th Cir.1972), *aff'd* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1973). The *punitive damages* also took the form of monetary damages. *Id.*

Accordingly, the court finds that the term "monetary damages" as used by Congress clearly anticipates the inclusion of all damages which could be awarded in the form of monetary damages. Therefore, the common-sense definition of the term must include actual damages, damages for emotional distress, and punitive damages.

Additionally, the court finds that had the monetary damages term not been clearly subject to definition, the court could still award punitive damages and damages for emotional distress under the "may award such other relief as the court deems appropriate" language of 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989). On the interpretation of a similar provision of the Former Act, one court held that:

[W]e do not think that the phrase "or other order" should be seized upon to broaden the scope of relief to include legal remedies such as damages. Fairly read in their statutory context, these words contemplate an order *extending or implementing* the equitable relief to be granted.

*Long*, 537 F.2d at 1153 [emphasis added]. As discussed in detail above, under the Amended Act Congress has expressly extended the remedial scope to include damages as well as equitable relief. In this regard, a proper reading of the "other relief" provision would include any award which *extends or implements* the award expressly provided for by Congress in the statute. Therefore, even if the term "monetary damages" is found to be limited to actual damages only, the defendant may still be subject to the imposition of damages for emotional distress and/or punitive damages where the court deems same appropriate. 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989).

Finally, regarding the award of damages for emotional distress and punitive damages, the court makes no factual finding as to the imposition of same in the present case. The effect of this order is merely to deem damages for emotional distress and punitive damages *available* under the statute for the purposes of disposing of Defendants' Motion to Strike. The Defendant of course maintains the right to argue at trial that the facts of this case do not warrant the imposition of these damages, despite the fact that such a remedy is available under the applicable statute.

### Certification of Questions for Interlocutory Appeal

The jurisdiction of the Federal Courts of Appeal may be immediately invoked

When a District judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which

---

**6.** The court admits that the *Long* interpreted the Former Act and, therefore, it possesses only limited applicability in the present case. However, like the following cases decided under the Former Act, it is useful to our task of defining the term "monetary damages."

there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. 28 U.S.C.A. § 1292(b) (West Supp.1989).

In the present case, the court finds that the Defendants' motion to Strike, if decided in the Defendants favor, could be dispositive of the entire case. The resolution of this motion involves a controlling question of the interpretation of the law as to which there is substantial ground for difference of opinion. Additionally, as noted earlier, this court recognizes the absence of controlling precedent with respect to both the retroactive application of the Fair Housing Amendment Act of 1988 and the enforcement of said act with respect to punitive damages and damages for emotional distress.

Finally, the court finds that an immediate appeal of these issues may "materially advance the ultimate termination of this litigation." Accordingly, pursuant to 28 U.S.C.A. § 1292(b) (West Supp.1989), this court hereby certifies the following issues for interlocutory review by the Eleventh Circuit Court of Appeals:

1. Can the Fair Housing Amendment Act of 1988, which expressly authorizes the United States to seek monetary relief, including both damages and civil penalties, be applied retroactively to discrimination which is alleged to have occurred prior to the effective date of the Amended Act?

2. Does the term "monetary damages" as used by Congress in 42 U.S.C.A. § 3614(d)(1)(B) (West Supp.1989) anticipate the award of punitive damages and compensatory damages for emotional distress, or is it limited to the award of monetary relief for economic loss and civil penalties?

Pursuant to the applicable interlocutory appeal statute, if the Defendant intends to bring an interlocutory appeal of these issues, application must be made to the Eleventh Circuit within ten days of the entry of this order.

The court finds that this litigation is only presently in the discovery stage and the record shows that the parties are actively engaged in the fact-finding process. Addi-

tional facts may be necessary to the final disposition of this matter, regardless of the decision of the Court of Appeals on the certified questions. Accordingly, void an order from the Court of Appeals pursuant to 28 U.S.C.A. § 1292, these proceedings *shall not be stayed* in the district court pending the outcome of the appeal.

In view of all of the foregoing, it is

ORDERED and ADJUDGED that the Defendants' Motion to Strike (DE 25) is hereby DENIED. Further, it is

ORDERED and ADJUDGED that the Plaintiff's Motion to File a Response in Excess of the page limit (DE 36) is hereby GRANTED *nunc pro tunc.* Further, it is

ORDERED and ADJUDGED that the Motion for leave to file a memo Amici Curiae (DE 50) is hereby GRANTED *nunc pro tunc.* Finally, it is

ORDERED and ADJUDGED that the above-stated questions are hereby certified as proper issues for interlocutory appeal. If the Defendant so chooses to seek appeal therefrom, he shall file within 10 days of the date of this order, an application with the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 1292. However, the prosecution of this litigation in the district court shall proceed and there shall be no stay granted except by order of the Court of Appeals.

DONE and ORDERED.